UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 13-CR-486-EJD (PSG) |
| Plaintiff, | **ORDER DENYING GOVERNMENT'S MOTION татра DETAIN DEFENDANT** |
| v. | |
| CUONG CAU DANG, | |
| Defendant. | |

On August 7, 2013, the court heard arguments regarding the government's motion to detain Defendant Cuong Cao Dang ("Dang"). Dang was represented by Michael Vu; the United States was represented by Assistant United States Attorney David Calloway.

After considering the arguments and proffers presented by both parties, as well as the report and recommendation of Pretrial Services, the court denied the government's motion and set conditions under which Dang may be released. Among the conditions set was a $2,500,000 bond to be secured by three of Dang's properties, all in San Jose, whose collective equity was estimated by Pretrial Services to equal the full bond amount: 3016 Beckley Drive, 1063 Woodminster Drive, and 3036 Kettman Way. Dang was prohibited from traveling outside the Northern District of California. After noting that Dang's passport was seized by the government upon his arrest, the

1
Case No.: C 13-486 EJD (PSG)
ORDER

court further ordered Dang not to apply for any passports or travel documents. The court included two sureties on the bond: Dang's father Phung Dang and his wife Ly Le, the mother of his four minor children. Dang further was put on "house arrest" subject to electronic monitoring, with permission to leave his home only for medical, dental, religious or legal appointments.

The government requested that the court refrain from issuing the release order to permit it the opportunity to seek revocation by the district judge pursuant to 18 U.S.C. § 3145(b). The court granted the request. So that the district judge may have the benefit of the undersigned's reasoning in conducting its review, the court provides that reasoning below.

## I. BACKGROUND

Dang is charged with violating 18 U.S.C. § 1349 (conspiracy to commit mail fraud), 18 U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1957 (monetary transactions using criminally derived property), 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) (forfeiture of criminally derived proceeds), and 18 U.S.C. § 982(a)(1) (money laundering forfeiture).

Prior to his arrest, the government contacted Dang as part of its investigation and ultimately executed a search warrant of Dang's home.

Several months later, following his arrest, Dang made his initial appearance on July 26, 2013 before the United States Magistrate Judge Howard R. Lloyd. At the initial appearance, the government moved for detention on two grounds: risk of flight and undue danger to the community. In light of a request from defense counsel for a scheduling accommodation, Judge Lloyd scheduled the hearing on the motion before the undersigned.

## II. LEGAL STANDARDS

The Eighth Amendment to our Constitution provides that "[e]xcessive bail shall not required." In furtherance of this constitutional mandate, the government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be

2
Case No.: C 13-486 EJD (PSG)
ORDER

mitigated through the imposition of conditions of release. In proving undue risk of flight, the government must show by a preponderance of the evidence that no condition or combinations of conditions will reasonably assure the defendant's appearance.[1] In contrast, the government bears the burden of showing that the defendant poses a undue danger to the community by clear and convincing evidence.[2] If the government does not meet its burden, the court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or danger to the community.

"Federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail.[3] Only in rare circumstances should release be denied.[4] Doubts regarding the propriety of release should be resolved in favor of the defendant.[5] A person facing trial generally must be released if some "condition, or combination of conditions ... [can] reasonably assure the appearance of the person as required and the safety of any other person and the community."[6] This is a mandate, not an option, and in non-capital cases, pretrial release should be denied "[o]nly in rare circumstances."[7] An important consequence of all this is that close cases should result in

---

[1] *See United States v. Motamedi,* 767 F.2d 1403, 1407 (9th Cir. 1985) (holding that "the Government's burden in denying bail on the basis of flight risk is that of the preponderance of the evidence").

[2] *See id.* at 1406.

[3] *Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3 (1951); *United States v. Honeyman,* 470 F.2d 473, 474 (9th Cir.1972).

[4] *See Sellers v. United States,* 89 S. Ct. 36, 38 (1968) (Black, J., in chambers); *United States v. Schiavo,* 587 F.2d 532, 533 (1st Cir. 1978); *United States v. Abrahams,* 575 F.2d 3, 8 (1st Cir. 1978), *cert. denied,* 439 U.S. 821 (1978).

[5] *Herzog v. United States,* 75 S. Ct. 349, 351 (1955) (Douglas, J., in chambers); *United States v. McGill,* 604 F.2d 1252, 1255 (9th Cir. 1979), *cert. denied,* 444 U.S. 1035 (1980).

[6] 18 U.S.C. § 3142(c).

[7] *Motamedi,* 767 F.2d at 1405; *see also United States v. Salerno,* 481 U.S. 739, 755 (1987) (upholding constitutionality of Bail Reform Act; "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception").

3
Case No.: C 13-486 EJD (PSG)
ORDER

release: "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases."[8]

Bail hearings generally proceed by proffer, and the rules of evidence do not apply.[9]

In evaluating whether pretrial release is appropriate, a court must consider (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, or record concerning appearance at court proceedings), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release.[10]

### III. ANALYSIS

**A. The Nature and Circumstances of the Offense**

According to the indictment, beginning no later than 2006, while doing business as Network Genesis, Dang ran a scheme to defraud Cisco Systems ("Cisco"). The scheme is alleged to have involved Dang buying counterfeit or stolen Cisco merchandise from Cisco employees and reselling that merchandise after altering the external serial numbers to make the merchandise more difficult to trace. Dang is alleged to have provided "test sheets" to his customers that corresponded to the altered serial number on the part he was selling rather than the true internal serial number for

---

[8] *United States v. Chen,* 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *Motamedi,* 767 F.2d at 1405–06). *See also Motamedi*, 767 F.2d at 1407 ("We are not unmindful of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons") (citations omitted).

[9] *See* 18 U.S.C. § 3142(f).

[10] 18 U.S.C. § 3142(g); *Motamedi,* 767 F.2d at 1407.

4
Case No.: C 13-486 EJD (PSG)
ORDER

that part. Dang is further alleged to have directed his customers to send payments for the merchandise to "nominees" who then funneled the payments back to Dang.

The statutory maximum period of imprisonment on the charges is 20 years, confirming that Dang is charged with a serious crime. But the government has not offered any preliminary calculation of Dang's sentencing guidelines range. While such a guideline calculation of course is not binding on the parties or the court in any sentencing, such information nevertheless would give the court and Dang a clearer sense of the plausible term he may serve – and a better sense of his risk of flight. In any event, Congress requires consideration of more than just the potential sentence of the charged offense; other elements clearly must inform the offense's "nature and circumstances." Here, Dang's alleged offense involved a particular scheme to defraud a single victim. That scheme is alleged to have involved specific relationships with the victim's employees and a specific laundering scheme to mask the trail of payments. The government has not shown that Dang has the means or the opportunity to repeat this particular crime, and so the court has no grounds from which to assume that upon release Dang could unleash such a scheme against Cisco a second time or against another victim entirely.

This factor weighs against detention and in favor of release on restrictive conditions.

**B.   Weight Of The Evidence**

The weight of the evidence of Dang's scheme, and the profits he made thereby, is substantive. The grand jury heard evidence of at least eight specific transactions involving five specific individuals and two withdrawals from Network Genesis' account at Wells Fargo Bank. By returning an indictment, a grand jury establishes probable cause that Dang committed the scheme

5
Case No.: C 13-486 EJD (PSG)
ORDER

as charged. It is fair to conclude that Dang might have a heightened motivation to flee if the government's evidence is relatively strong.[11]

This factor weighs in favor of detention, but the weight of the evidence is the least important factor.[12]

## C. The History and Characteristics of the Defendant

Dang was born in Vietnam in 1979 and immigrated to the United States as a child. He is a United States citizen. After graduating from Wilcox High School in San Jose in 1988, he has worked at a variety of companies all in this division, including Cisco, Solectron, and Network Genesis. Most recently, he has been self-employed as the owner of the Dang Investments in San Jose.

Among the assets of the Dang Investments are three properties in San Jose: 3016 Beckley Drive, 1063 Woodminster Drive, and 3036 Kettman Way. All three properties are paid off and have equity collectively worth $2,500,000. The Beckly Drive and Kettman Way properties are the subject of the forfeiture allegations included in the indictment.

Dang's criminal history includes various drug and burglary convictions, but none since over twenty years ago, in 1991. Even considering those convictions from earlier in Dang's life, the government proffers no evidence that Dang even once failed to appear.

Beyond mere speculation, Dang has not been shown to have access to significant foreign resources. His identified bank account has a few thousand dollars, and all other identified assets are either illiquid or indicted and subject to lis pendens filings.

---

[11] *Cf. United States v. Perez–Chavez,* 422 F. Supp. 2d 1255, 1267 (D. Utah 2005) (observing that "an illegal re-entry case is easy to prove" as the prosecutor must "demonstrate little more than that a defendant was found illegally present in this country").

[12] *See Motamedi*, 767 F.2d at 1408; *see also United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

6
Case No.: C 13-486 EJD (PSG)
ORDER

Dang does not suffer from any history of mental health conditions and has never received any mental health treatment. His only substance abuse treatment was over twenty years ago, in 1991.

Dang did not resist arrest.[13] No firearms or illicit substances were found on Dang upon his arrest. He is not a validated gang member.

There is no evidence that Dang reverted to his alleged illicit conduct after law enforcement searched his house. Nor is there any evidence that after the search of his house Dang did anything to flee the jurisdiction. Based on this, the language of the statute indicates that the court may not presume that Dang's past activities make him a clear, prospective danger to the community or a future risk of flight. Put another way, if Dang did not run and cannot be shown to have harmed anyone, especially Cisco, even months after he learned he was the target of an investigation, how can the court say now that there is an undue risk that Dang suddenly would change course despite the explicit court order to refrain from doing so?[14]

A defendant's ties to the community that are most significant are the "sort of family ties from which [a court] ... can infer that a defendant is so deeply committed and personally attached that he cannot be driven from it by the threat of a long prison sentence."[15] Since his arrival in this country decades ago, Dang has spent his entire life with his immediate family in the San Jose

---

[13] *Cf. United States v. Cachucha,* 778 F. Supp. 2d 1172 (D.N.M. 2011) (finding that resisting arrest indicates that defendant is a danger to the community).

[14] *Cf. Motadami,* 767 F.2d at 1407 ("The Government argues that Motamedi poses a serious risk of flight because of the additional charges contained in the indictment. Motamedi states that he has known of the investigation into his exporting activities since January 1984. Moreover, he was informed upon his arrest that the Government would seek an indictment on the current charges, but he was nevertheless released on conditions for several weeks before issuance of the indictment. Accordingly, he argues, there is no greater risk that he will flee now than there has been since his arrest and release on conditions. We agree.").

[15] *See United States v. Reuben,* 974 F.2d 580, 586 (5th Cir.1992) ("The family ties must be the type of relationship that exert a level of control that would prevent the defendant from fleeing."); *United States v. Almasri,* Case No. H07–155, 2007 WL 2964780, at *2 (S.D. Tex. Oct.10, 2007) (denying bail to a health care defendant who had no significant criminal history and who had family in this country, but who had extensive contacts in Lebanon and was facing a potential maximum sentence of ten years).

Case No.: C 13-486 EJD (PSG)
ORDER

Division of this district. He has lived alternatively with his father, mother, wife and four children in various locations in San Jose, Santa Clara and Sunnyvale. While Congress has cautioned against relying exclusively on family and community ties in making its determination,[16] Dang's ties here clearly run deep and support the decision to release him with conditions.

Dang regularly travels to Vietnam to perform charitable work. The court was provided with no information as to whether Vietnam will extradite United States citizens like Dang. But in any event, because his life is tethered to the United States, and not Vietnam, this factor still weighs against detention and in favor of release on restrictive conditions.

**D.     The Nature and Seriousness of the Danger to Any Person or the Community**

Dang's conduct does not suggest that he may have a propensity to be violent or otherwise pose a danger to the community. The best the government can point to is his use of his family members in the alleged scheme, but any suggestion that a person is dangerous because of his willingness to use family in his business presumes that the conduct at issue actually is a crime. The court is not at liberty at this stage to make that presumption.

The government also claims a "per se" danger from the magnitude of Dang's alleged operation. But at this point Dang must be presumed innocent, and the involvement of his family reveals nothing more than what happens anytime family members work in the same business. The same is true of the $37 million in revenue, which has yet to be proven to be anything more than the legitimate sales of that business. And no case in this circuit or any other brought to the court's attention establishes any such per se rule.

The government also points to evidence that Dang had an investigating agent's name on a family altar in his home. But this evidence in fact supports release. If Dang knew about the agent and the investigation long before his arrest and still did not attempt to flee, he is not likely to depart

---

[16] *See United States v. Abdullahu,* 488 F. Supp. 2d 433, 442 (D.N.J. 2007) (citation omitted) (the mere presence of defendant's immediate family in New Jersey is not sufficient to assure his presence at trial)

8

Case No.: C 13-486 EJD (PSG)
ORDER

now that he is under the court's restrictions. The court also is not persuaded that Dang presents a danger to the agent, given that he knew of her identity well before being placed under house arrest and with significant bail restrictions and still never threatened or even tried to contact her.

This factor weighs against detention.

## V. CONCLUSION

The Bail Reform Act favors pretrial release, not detention. Here, the government has charged Dang with non-violent crimes. While Dang poses a certain danger to the community and risk of flight, that is true in just about every case, and the court finds that the conditions outlined earlier will reduce the risk here to an acceptable level.[17]

If released, Dang would effectively be under house arrest and subject to electronic monitoring. The government rightly notes that electronic monitoring, and/or home confinement, merely impedes but does not prevent flight.[18] And the confiscation of Dang's passport does not guarantee his presence or prevent entirely his flight to another country.[19] But if Dang were to run, his father and his wife – the mother of his four minor children – would face execution of the full amount of a multimillion-dollar bond. The government disputes the deterrence value of sureties whom it maintains are unindicted co-conspirators. But here's the thing to keep in mind: none of Dang's family members haS yet been indicted on *any* charge. *If* and *when* the government chooses to indict either Dang's father or wife, the government could immediately move for revocation. The

---

[17] *See United States v. Recobo,* Case No. CR 11–2990–JB, 2012 WL 1371975, at *8 (D.N.M. Apr. 6, 2012) (government failed to show that defendant is such danger that no conditions would reduce that danger to acceptable level); *cf. United States v. Pina–Aboite,* 97 Fed. Appx. 832, 836 (10th Cir.2004) (risk that defendant will continue to engage in drug trafficking constitutes danger to community).

[18] *See Abdullahu,* 488 F. Supp. 2d at 444.

[19] *See, e.g., United States v. Villegas,* Case No. 3:11–cr–28, 2011 WL 1135018, at *7 (E.D. Tenn. March 25, 2011); *United States v. Alavarez,* Case No. 87 Cr. 811(SWK), 1987 WL 27696, at *3 (S.D.N.Y. Dec. 10, 1987); *United States v. Diaz,* Case No. 98 Cr. 1434(CSH), 1998 WL 915896, at *2 (S.D.N.Y. Dec. 30, 1998).

9
Case No.: C 13-486 EJD (PSG)
ORDER

government cites no case suggesting that, before any indictment is returned, such inviduals are per se ineffective as sureties.

Even if the father and wife were insufficient sureties, Dang's flight or danger to the community would risk forfeiture of properties worth millions of dollars. The government argues that the two of the properties are effectively worth nothing to Dang because they are indicted under the forfeiture charges. That may or may not be so, given that until the government proves its case they still have significant value to Dang. But in any event, the government says nothing about the third property, which is not indicted, and which itself is worth several hundred thousand dollars – a considerable sum for a person with few other assets outside the government's cross-hairs.

In sum, the government has not shown by clear and convincing evidence that no condition or combination of conditions absent full detention will reasonably assure the safety of any other person and the community.[20] Nor has it shown by a preponderance of the evidence that the stated conditions cannot adequately address the risk of Dang's flight. This is undeniably a close call. But if the mandate that close calls are to be resolved against detention means anything, Dang must be released on the extremely restrictive conditions set by the court. While acknowledging that nothing short of detention can ever guarantee Dang's appearance at further proceedings, as well as public safety, the court finds that the conditions of release set can *reasonably assure* that Dang is present at trial and will not harm the public.[21]

**IT IS SO ORDERED.**

Dated: August 9, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[20] *See* 18 U.S.C. § 3142(b), (e).

[21] *Cf. United States v. Orta,* 760 F.2d 887, 889–90 (8th Cir. 1985) (noting that the Bail Reform Act does not require the magistrate judge to find that conditions of release will "guarantee" the defendant's appearance or the safety of the community).

10
Case No.: C 13-486 EJD (PSG)
ORDER