BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

AMIE D. ROONEY (CABN 215324)
Assistant United States Attorney

    150 Almaden Boulevard, Suite 900
    San Jose, California 95113
    Telephone: (408) 535-5061
    FAX: (408) 535-5066
    Amie.Rooney@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR13-00486-EJD |
| Plaintiff, | |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| CUONG CAO DANG, | |
| Defendant. | Date: August 28, 2017<br>Time: 1:30<br>Hon. Edward J. Davila |

## INTRODUCTION

On December 11, 2015, the defendant, Cuong Cao Dang ("the defendant"), pleaded guilty to Counts 1, 2, 8, and 17 of the Superseding Indictment charging him, and several others, with conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1349; mail fraud, in violation of 18 U.S.C. § 1341; money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (B)(i); and structuring financial transactions, in violation of 31 U.S.C. §§ 5324(a)(1) and (a)(3) . The government has reviewed the Presentence Report ("PSR") and has no objection to the content of the report. The Probation Officer calculated the defendant's adjusted offense level to be 32;[1] and the defendant's Criminal History

---

[1] Officer Flores justifiably identified a flaw in the parties' calculation in the plea agreement: the

Category is I.  This results in a sentencing range of 121 to 151 months for conspiracy to commit mail fraud, mail fraud, money laundering, and structuring.  Officer Flores, prior to his retirement,[2] has recommended that the Court sentence defendant to 136 months' imprisonment for his involvement in the conspiracy to commit mail fraud.  The defendant pled guilty pursuant to an agreement wherein he agreed to cooperate with authorities.  Pursuant to that agreement, the defendant cooperated with authorities by providing statements to government investigators, giving a separate detailed statement to Cisco attorneys that was reportedly useful for them in the civil action, and providing information to the government about the identity and activities of at least one other individual who had not been previously identified for prosecution.  As this Court is also aware, however, the defendant did not limit his activities to those about which he told the government, and in March 2017 the government indicted the defendant on additional charges.  It is anticipated that the related case, charged in CR17-0115-EJD, will resolve by way of a guilty plea pursuant to an agreement between the parties on August 28, 2017; but in any case, the government does not believe that sentencing in this matter should be further delayed.  Because of the defendant's actions leading to his second indictment, the United States believes that the defendant's assistance, however useful, cannot be considered for a motion under U.S.S.G. § 5K1.1, as he violated the other terms of his agreement with the government.

Nevertheless, based upon the defendant's cooperation, and taking into account all of the sentencing factors under 3553(a), the government is recommending the defendant be sentenced to a custodial term of 121 months' imprisonment, or the low-end of the advisory guideline range as correctly calculated, and within the range as calculated by the parties pursuant to the plea agreement.  The United States further respectfully recommends that the Court sentence the defendant to three years of supervised release and a $400 special assessment.  Restitution to the victim, Cisco Systems, Inc. ("Cisco"), has been satisfied in the form of civil forfeiture of substantial personal property seized at the time of the search warrant, as well as real property that the defendant signed over to Cisco as part of the civil settlement.

---

failure to include the specific offense characteristic attributable to the money laundering conviction under U.S.S.G. § 2S1.1(b)(2).  The government addresses that oversight further herein.

[2] Officer Flores disclosed the final report on October 31, 2016. The parties have delayed sentencing for almost a year based on a variety of factors of which the Court is aware.

# DISCUSSION

It is now well established that, in determining the appropriate sentence, this Court must conduct a two-step inquiry: (1) it must first correctly calculate the applicable Guidelines range as the "starting point;" and (2) it must assess the factors set forth in 18 U.S.C. § 3553(a) to fashion an individualized sentence that is sufficient, but not greater than necessary, to achieve the aims of the statute. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

## I. Offense Conduct

The instant offense is accurately described in the PSR. [See PSR, §§ 13-42.] The court is aware of the scope of the overall scheme involving at least seven individuals (and likely several more who could not be identified by the government or for whom evidence was less overwhelming) and led by this defendant which defrauded Cisco to the staggering tune of between $37 million and $25 million in stolen parts and equipment. The overall scheme started at least as early as January 2006, and this defendant, as the architect, was involved from the very beginning until the bitter end, when the government search led to the cessation of operations of his company. [PSR ¶¶13, 14] The defendant admitted that his business, Network Genesis, existed primarily for the purpose of buying and selling stolen Cisco merchandise, that he bought that merchandise from people he knew were Cisco employees, and paid them in cash for it. [*Id.* at ¶ 15.] He further admitted that he altered the serial numbers (or directed others to do so) on the products to make them more difficult to trace, and often knowingly provided false test sheets to his customers that corresponded to the altered serial numbers on the part he was selling, not the true serial number for the part that the customer was actually receiving. [*Id.* at § 19.] He also admitted that he used a commercial carrier, usually FedEx, to ship the parts to his customers. [*Id.* at ¶¶ 15, 20.] In order to hide the millions of dollars that he was making, the defendant used intermediaries, including some of his co-defendants in this present case, to launder the funds. [*Id.* at ¶ 17.] In total, the defendant admitted that he had revenue during the period of the Superseding Indictment of approximately $37 million, of which he agreed more than $25 million was proceeds of his criminal activity. [*Id.* at 19.]

## II. Guidelines Calculation

Under *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court ruled that the federal

sentencing guidelines are "effectively advisory," and that "[t]he district court, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id*. at 245-46. *See also* 18 U.S.C. § 3553(a)(4). In the instant case, the starting place is the calculation of the applicable guideline range. The parties have agreed to the following guideline range:[3]

| | | | |
|---|---|---|---|
| a. | Base Offense Level: [U.S.S.G. § 2B1.1(a)(1) – Mail Fraud] | | 7 |
| b. | Specific offense characteristics: [U.S.S.G. § 2B1.1(b)(1)(L) - Loss More Than $25 Million but Less Than $65 Million] | | +22 |
| | Receiving and Selling Stolen Property [U.S.S.G. §2B1.1(b)(4)] | | +2 |
| | Money Laundering Offense under 18 U.S.C. § 1956 [U.S.S.G. § 2S1.1(b)(2)(B)] | | +2[4] |
| c. | Role adjustment – Leader/Organizer [U.S.S.G. § 3B1,1(c)]: | | +2 |
| d. | Acceptance of Responsibility: | | -3 |
| e. | Adjusted Offense Level: | | 32 |

An adjusted offense level of 32 when indexed with Criminal History Category I results in a sentence of 121 to 151 months' imprisonment.

**III.     Section 3553(a) Factors Do Not Warrant an Additional Variance**

Neither United States Probation, nor the United States believes that a variance based on other factors is warranted for the defendant. Although the defendant does not have criminal history points, due to the age of his prior convictions, this defendant has admitted participation in a far-reaching fraud scheme spanning seven years, from 2006 to 2013, involving many dozens of unwitting customers as victims and millions of dollars of loss to Cisco. Had this defendant not conceived of this plan, started Network Genesis, recruited his six co-defendants to participate in his scheme, and continued to induce

---

[3] As noted in the PSR at ¶ 4, in the plea agreement the parties failed to account for the specific offense characteristic associated with the defendant's guilty plea to Count 8, Money Laundering, in violation of 18 U.S.C. § 1956. The government includes it here for the sake of the most accurate calculation.

[4] *Id.* While the government believes this offense characteristic must be applied for the accurate guideline calculation, its inclusion does not change the government's overall recommendation for the defendant's custodial sentence. Were this enhancement excluded, 121 months would still be within the advisory guideline range applicable to the defendant's plea.

others to steal so that he could endlessly amass wealth for no apparent reason other than it was easy.

The government wishes that it could say, as it has for others, that this appears to be the defendant's first and only foray into criminal activity, and that he has maintained a good record while on pre-trial release. Unfortunately, we know that is not the case for this defendant. He suffered several criminal convictions as a young man in 1991 that appear to have been related to drug abuse and the difficult circumstances of his home circumstances as described in the PSR. But this large and extensive of a fraud, the planning and execution of which shows a level of boldness and criminal sophistication that cannot be dismissed as either aberrant or unwitting, conducted over a prolonged period of time for no reason other than personal financial gain for all conspirators, represents a callousness and severe lack of judgment over years not months. This is not the defendant's first criminal offense, and while the government would like to believe that he has learned his lesson and will not likely re-offend, in truth he probably needs an extensive jail sentence to make sure that will be the case. He has taken responsibility for his actions as demonstrated both by his willingness to resolve the matter short of trial, his credible cooperation with the civil lawyers for the victim company in their investigation, as well as in his statements to the Probation Office. He is, by all reports, a good and caring father and husband. But, the government does not believe that he is vastly different from other similarly situated defendants such that, for the purposes of the government's recommendation, it takes him outside the heartland of the sentencing guidelines.

The government is justifiably concerned, however, that there seemed to be no real impetus for the defendant to commit the crimes other than garden-variety financial greed. He had benefitted immensely from the opportunity he was given as a 15-year old to enter the United States as a refugee. While the defendant is to be commended for his cooperation with Cisco since his guilty plea in December 2015, providing information about his crimes and the involvement of others in the criminal conspiracy, the defendant has admitted that, prior to his guilty plea, he was actively engaged in trying to undermine the government's case through contact with his co-defendants and other potential witnesses. Moreover, as a direct result of the defendant's crimes, Cisco also has expended significant internal and external resources to investigate, detect, and eliminate the threat of further thefts from other employees. As described by Cisco in their victim impact filing, "such investigations are not only costly and time-

consuming, but they also affect Cisco's day-to-day operations by diverting the attention of Cisco employees from their otherwise normal tasks and negatively impacting employee morale." [See Cisco Victim Statement, submitted separately to the Court.] Nothing other than greed explains the sheer size and length of this fraud, and nothing short of the government's search and the defendant's prosecution seems likely to have stopped it one minute earlier than it did.

A sentence of 121 months' imprisonment would reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense. A custodial sentence of 121 months would also serve as an important deterrent not only to the defendant but also to individuals who are currently involved in or considering participating in other "easy, won't get caught, company is rich and will never miss it" schemes that are thinly-veiled covers for criminal activity as a means to supplement their income. In light of the complexity, length and sheer amount of the theft, as well as the defendant's failure to abide by the terms of his plea agreement to not commit any further federal, state, or local offenses, a significant custodial sentence is warranted for this lead defendant and architect of the immense fraud.

**IV.   Restitution**

Restitution is mandatory for any offense "in which an identifiable victim or victims have suffered a physical injury or pecuniary loss." *See* 18 U.S.C. § 3663(A)(c)(1)(B). Counsel for victim corporation Cisco has confirmed that defendant has settled his civil claims with the company and no further restitution is sought.

**CONCLUSION**

In full consideration of the defendant's assistance, history and characteristics, together with the other goals of sentencing, the United States respectfully requests that the Court sentence the defendant to 121 months' imprisonment, followed by 3 years of supervised release, and a $400 special assessment.

DATED: August 21, 2017                    Respectfully submitted,

                                                                      BRIAN J. STRETCH
                                                                       United States Attorney

                                                                     _s/ Amie D. Rooney_____
                                                                       AMIE D. ROONEY
                                                                       Assistant United States Attorney